UNITED STATES of America, Plaintiff-Appellee,

v.

Antonio M. **BRIONES**, Defendant-Appellant.

No. 28205.

United States Court of Appeals, Fifth Circuit.

March 13, 1970.

Rehearing Denied April 7, 1970.

Certiorari Denied June 29, 1970.

See 90 S.Ct. 2270.

Robert O'Conor, Jr., Laredo, Tex., for appellant by appointment of the Court.

Nat B. King, Laredo, Tex., associate counsel under Rule 7(1) of this Court.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Ronald J. Blask, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before WISDOM, GOLDBERG, and INGRAHAM, Circuit Judges.

PER CURIAM:

This case considers the question whether customs agents at the Mexican-American border had sufficient grounds to conduct a stomach search for narcotics. We conclude that they had sufficient grounds and affirm the conviction.

## I.

A confidential informer who had proven reliable in the past informed Customs Agent Jordan at Laredo, Texas, that the appellant Briones and a companion were in Mexico, had purchased heroin, and would smuggle it into the United States in their stomachs. The customs agent knew that Briones was a narcotics addict. He was able to confirm the fact that Briones was in Mexico, for Briones had filed a 1047 registration form [1] as a convicted narcotics law violator before entering Mexico. As predicted by the informer, Briones and his companion returned to the United States at Laredo that day. Agents searched the two without success. When a doctor administered an emetic to Briones' companion, he regurgitated a container of heroin. Briones then talked by telephone with a lawyer. After he tried unsuccessfully to regurgitate on his own, an emetic was administered to him and he regurgitated two containers of heroin. Only after the regurgitation was Briones warned of his constitutional rights. He now appeals from his conviction of illegal

---

1. 18 U.S.C. § 1407 requires convicted violators of the narcotics laws to register when leaving the United States and sur- render a registration certificate when returning.

importation, concealment and transportation of heroin hydrochloride.[2]

## II.

■ Briones contends that this warrantless border search of his stomach was unconstitutional. Border searches have traditionally been subject to less stringent standards than those applied in testing the constitutionality of other searches.[3] This Court has said that rather than traditional notions of probable cause a "mere suspicion" will justify such a search. Morales v. United States, 5 Cir. 1967, 378 F.2d 187, 189. Briones argues, however, that although the standard of probable cause need not be met, the Supreme Court case of Schmerber v. California, 1966, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, requires that body cavity searches, whether at the border or not, be justified by more than a mere suspicion. The Ninth Circuit in Henderson v. United States, 1967, 390 F.2d 805, has raised its standard from that of mere suspicion to "a clear indication of the possession of the narcotics or a plain suggestion of the smuggling which must be over and above a mere suspicion". We consider it unnecessary to resolve this question, however, for we find that the search in this case was reasonable under either standard. The Government had received its informer's specific statement, knew of Briones' reputation as an addict, and confirmed that he was a narcotics law violator and was in Mexico as the informer had said. When Briones returned from Mexico with a companion as the informer had predicted, and his companion regurgitated a container of heroin, we conclude that the Government had sufficient grounds to justify the search.

■ In challenging the grounds for the search, Briones attacks the use of the informer's statement because the Government did not identify him, and the record does not sufficiently prove his past reliability or establish the sources of the informer's information. Briones also maintains that the record does not show that any one agent responsible for the search had sufficient information to justify the procedure. On the motion to suppress, the Government properly assumed the burden of justifying the warrantless search. At the hearing, Customs Agent Jordan testified that a confidential informer had given him information, that he had known the informer in the past, had used him in smuggling or narcotics violation cases and that his information had proved reliable in the past. Jordan testified to having checked the 1047 registration and the doctor who administered the emetic testified that Briones' companion regurgitated first. Briones made no attempt to challenge the informer's reliability or to ask for his identity. Nor did he make any attempt to show the limitations on any one agent's knowledge. In this context, we conclude that the Government's evidence made a prima facie case sufficient to justify the search; if Briones wished to contest the reliability of the informer or the independent knowledge of the agents, he should have cross-examined them below to bring out deficiencies in the justification. Instead, Briones' counsel cross-examined no one but the doctor who finally administered the emetic and did not even question his knowledge[4] of the grounds for the search.

■ Briones' attack on the 1047 form is equally unpersuasive. He contends that use of the 1047 registration form to justify the search violates his fifth amendment right not to incriminate himself. If Briones were being prosecuted for failure to register, then his arguments as to how the registration might

---

2.  21 U.S.C. § 174.

3.  *See generally* Hall, Kamisar, La Fave, & Israel, Modern Criminal Procedure 298–99; Note, Border Searches and the Fourth Amendment, 77 Yale L.J. 1007 (1968); Note, At the Border of Reasonableness: Searches by Customs Officials, 53 Cornell L.Q. 871 (1968).

4.  On the question of Briones' competency, Briones' counsel also cross-examined the doctor who believed Briones competent.

incriminate him would be relevant. In fact however, Briones did register. His registration is being used not as evidence to convict him or to incriminate him, but simply to show that the customs agents had sufficient grounds on which to search him.

### III.

Finally, Briones contends that his conviction must be reversed because *Miranda* warnings were given too late. Since we conclude that under *Schmerber* the heroin was not equivalent to testimony, *Miranda* does not require its exclusion. The *Miranda* protections would have availed Briones nothing, for we have already concluded that the compulsory search was permissible under the fourth amendment.

We affirm the judgment of the district court.